**Diana DIMARE, Appellant**

v.

**METLIFE INSURANCE COMPANY.**

No. 09–1068.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 20, 2009.

Filed: March 4, 2010.

Catherine M. Brown, Esq., Morristown, NJ, Jerrold Kamensky, Esq., Mark D. Laderman, Esq., Philip B. Whitcomb, Esq., Kamensky, Cohen & Associates, Trenton, NJ, for Appellant.

Christopher M. Galusha, Esq., J. Michael Riordan, Esq., McElroy, Deutsch, Mulvaney & Carpenter, Morristown, NJ, for Appellee.

Before: RENDELL, BARRY and CHAGARES, Circuit Judges.

## OPINION OF THE COURT

CHAGARES, Circuit Judge.

Appellant Diana DiMare filed a complaint against her former employer, Met-Life Insurance Company ("MetLife"), asserting claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5–1 et seq., and tort claims under New Jersey common law. DiMare appeals the District Court's decisions to grant MetLife's motion to dismiss certain claims and motion for summary judgment on the remaining claims. For the reasons set forth below, we will affirm.

### I.

Because we write solely for the benefit of the parties, we will recite only the facts essential to our analysis. DiMare joined MetLife as a financial associate in August 1991. She held various positions there until February 2006. On February 10, 2006, DiMare went on short-term disability leave due to a diagnosis of breast cancer. In August 2006, DiMare transitioned to long-term disability leave. In late January 2007, DiMare informed MetLife that she would return to work on February 12, 2007. However, DiMare's previous position had been filled during her absence by Paula Fitzgibbon, another female employee. Prior to DiMare's return, MetLife notified her that her position had been filled and that she was eligible for the MetLife Plan for Transition Assistance for Officers severance package, or in the alternative, she could attempt to find another position within MetLife. MetLife further

advised DiMare that if she was unsuccessful in securing another job within thirty days, she would be terminated and immediately eligible for the severance package. From early February 2007 until March 15, 2007, DiMare did not receive a salary. She instead utilized her outstanding paid time off while she attempted to find another position within MetLife. DiMare failed to secure another position, and on March 15, 2007 MetLife terminated her employment.

On August 9, 2007, DiMare filed a complaint against MetLife in New Jersey Superior Court. MetLife removed the action to the District Court on September 7, 2007. DiMare's complaint alleged employment discrimination based on medical disability and gender and reprisal in violation of the NJLAD, breach of express contract, breach of implied contract, breach of implied covenant of good faith and fair dealing, negligent infliction of emotional distress, intentional infliction of emotional distress, and fraudulent misrepresentation.

MetLife filed a motion to dismiss on October 8, 2007. The District Court dismissed the reprisal claim because DiMare failed to establish that a medical leave of absence is a protected activity under the NJLAD and even if it were, DiMare failed to establish a causal link between her medical leave of absence and her termination. The District Court dismissed both breach of contract claims, as well as the claims for breach of implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and intentional infliction of emotional distress as preempted by the NJLAD claims. The District Court dismissed the fraudulent misrepresentation claim because it failed to allege the specific facts required to withstand a motion to dismiss.

On September 12, 2008, MetLife moved for summary judgment on the remaining causes of action, discrimination based on medical disability and gender. MetLife asserted that it terminated DiMare because of the "elimination of her position and her failure to secure another position within 30 days after returning from a leave of absence in accordance with MetLife's Leave Discontinuance Procedure [the "Procedure"]." Appellant's Appendix ("Appellant's App.") 18. The District Court held that DiMare failed to demonstrate that MetLife's proffered explanation was a pretext for discrimination, and granted MetLife's motion for summary judgment. DiMare appealed to this Court.

## II.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

We review the District Court's grant of summary judgment de novo, applying the same standard that it used. *Lawrence v. City of Philadelphia*, 527 F.3d 299, 310 (3d Cir.2008). We will view the evidence in the light most favorable to DiMare and draw all justifiable, reasonable inferences in her favor. *Id.* We will affirm if "there is no genuine issue as to any material fact" and the defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

We exercise plenary review of the District Court's dismissal of DiMare's claims under Fed.R.Civ.P. 12(b)(6). *See Gelman v. State Farm Mut. Auto. Ins. Co.*, 583 F.3d 187, 190 (3d Cir.2009). We must " 'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.' " *Grammer v. John J. Kane Reg'l Ctrs.–Glen Hazel*, 570 F.3d 520, 523 (3d Cir.2009) (quoting *Phillips v. County of*

*Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

## III.

### A.

■ DiMare appeals the District Court's decision to grant summary judgment to MetLife on her gender and disability discrimination claims.[1] In the absence of direct evidence of discrimination, an employee asserting a claim under the NJLAD may prove discrimination using the three-step burden-shifting inquiry established by *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Bergen Commercial Bank v. Sisler,* 157 N.J. 188, 723 A.2d 944, 954–55 (1999). Under *McDonnell Douglas,* the plaintiff bears the initial burden of establishing a *prima facie* case of unlawful discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff succeeds, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. *Id.* Once the employer meets its "relatively light burden," the burden of production returns to the plaintiff, who must show by a preponderance of the evidence that the employer's proffered reason is pretextual. *Fuentes v. Perskie,* 32 F.3d 759, 763 (3d Cir.1994). To defeat summary judgment at the pretext stage, "the plaintiff must point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious

discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* at 764. Despite the burden-shifting, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

■ MetLife asserts that DiMare was terminated due to the elimination of her position and her failure to secure another position within thirty days of her return from leave, in accordance with the Procedure. Assuming, without deciding, that DiMare has established a *prima facie* case of discrimination, she fails to come forth with any evidence whatsoever that MetLife's articulated reason for terminating her employment was a pretext for discrimination.

The evidence shows that MetLife replaced and later terminated DiMare in accordance with the Procedure. The Procedure states that "[an employee] may be replaced if he/she does not return to work after FMLA/state law leave has been exhausted unless the manager grants a leave of absence. However, unless there is a significant business need, Company practice is not to replace *until such time that the [employee] moves onto long term disability.*" Appellant's App. 461 (emphasis added). MetLife's practice is to hold a position open for an employee on an approved leave of absence for a maximum of six months. *Id.* at 456. If MetLife has replaced an employee who was out on

---

1. DiMare argues that the District Court erred in considering a motion for summary judgment so close to trial and without oral argument. We need not dwell on this argument. Rule 56(a)(1) of the Federal Rules of Civil Procedure provides that a party may move for summary judgment at any time once "20 days have passed from commencement of the ac-

tion." Fed.R.Civ.P. 56(a)(1) (2008) (amended 2009). Further, pursuant to Rule 78 of the Federal Rules of Civil Procedure and N.J. Civil Local Rule 78.1, motions may be decided on the briefs and without oral argument. The District Court properly considered MetLife's motion for summary judgment.

long-term disability and that employee wants to return to work, the Procedure instructs human resources to "put the [employee] on an unpaid leave of absence so equivalent opportunities can be explored.... If no opportunity is found within about 30 days, proceed with termination due to job elimination." *Id.* at 461.

DiMare's leave extended from February 2006 to January 2007, and her long-term disability began in August 2006. Thus, MetLife's decision to fill DiMare's position was consistent with the Procedure. Furthermore, the evidence shows that Gina Cochran of MetLife Human Resources circulated DiMare's resume to other departments of the organization in which DiMare had expressed an interest. DiMare fails to proffer any evidence whatsoever that MetLife's decision not to hire her for another position was a pretext for discrimination.

The undisputed evidence is that MetLife had in place a non-discriminatory policy that allowed it to fill DiMare's position while she was on leave and that it adhered to that policy. In sum, DiMare has failed to establish a genuine issue of material fact sufficient for a factfinder to reasonably either: 1) disbelieve MetLife's assertion that it terminated DiMare because her position had been filled while she was on long term disability and she failed to secure another position within thirty days; or 2) believe that invidious discrimination was more likely the motivating cause of MetLife's actions. *See Fuentes,* 32 F.3d at 764. Accordingly, the District Court properly granted MetLife's motion for summary judgment on DiMare's claims of gender and disability discrimination.

### B.

DiMare also appeals the District Court's Rule 12(b)(6) dismissal of her claims for breach of implied contract, intentional infliction of emotional distress, and fraudulent misrepresentation.[2]

### 1.

A fraudulent misrepresentation under New Jersey law "consists of a material representation of a presently existing or past fact, made with knowledge of its falsity and with the intention that the other party rely thereon, resulting in reliance by that party to his detriment." *Voilas v. Gen. Motors Corp.,* 170 F.3d 367, 376 (3d Cir.1999) (internal citations omitted). A party alleging fraud "must state with particularity the circumstances constituting fraud." Fed.R.Civ.P. 9(b). This Court has held that to satisfy Rule 9(b), a plaintiff "must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the 'precise misconduct with which [it is] charged.'" *Frederico v. Home Depot,* 507 F.3d 188, 200 (3d Cir.2007) (alteration in original) (quoting *Lum v. Bank of Am.,* 361 F.3d 217, 223–24 (3d Cir.2004)). This requires a plaintiff to either plead the date, time, and place of the alleged fraud, or inject precision into the allegations by some alternative means. *See id.*

The District Court found that the fraud claim was supported only by a "conclusory allegation" that "MetLife had expressly knowingly, intentionally, recklessly and/or negligently misrepresented its intent to continue to gainfully employ Plaintiff ... with the intention/knowledge that Plaintiff

**2.** DiMare does not appeal the District Court's decision to dismiss her claims of breach of express contract, breach of implied covenant of good faith and fair dealing, negligent infliction of emotional distress, and her reprisal claim under the NJLAD. Thus, DiMare has "abandoned and waived" those issues and this Court need not address them. *See Kost v. Kozakiewicz,* 1 F.3d 176, 182 (3d Cir.1993).

would rely upon same." Appellant's App. 10–11 (citing Compl. ¶ 32).

On appeal, DiMare argues that the complaint "describes the misrepresentation that Plaintiff was promised her job position would be held open for her when she returned from medical leave" and "the misrepresentation wherein Appellant was promised that she would be continually employed." DiMare Br. 22. In determining the sufficiency of DiMare's allegations under Rule 9(b), we look only to the complaint; we will not consider the allegations in DiMare's brief. *See Frederico,* 507 F.3d at 201–02 (refusing to consider allegations in appellant's brief that did not appear in the complaint).

The complaint does not support DiMare's argument. In her complaint, DiMare makes generic references to the fact that she was "welcomed back" to work at the Bridgewater facility and was "welcomed back" at a bi-annual meeting on January 30, 2007 before she was told that her job had been eliminated. Appellant's App. 538. The complaint does not describe any representations whatsoever made by MetLife either before or after DiMare's absence that DiMare's job would be "held open for her" or that she would remain "continually employed." DiMare's complaint also fails to disclose the identity of the person who made the allegedly fraudulent misrepresentations.

Without such details MetLife was not placed "on notice of the precise misconduct with which [it was] charged." *Frederico,* 507 F.3d at 200–01 (quotations omitted) (noting that plaintiff failed to place defendant on notice by neglecting to plead the substance of the alleged misrepresentations, the circumstances surrounding the alleged fraudulent statements and any information about the individual who made the statements); *see also Lum,* 361 F.3d at 224 ("Plaintiffs also must allege who made

a misrepresentation to whom and the general content of the misrepresentation."); *Klein v. Gen. Nutrition Cos., Inc.,* 186 F.3d 338, 345 (3d Cir.1999) (holding that Rule 9(b) "requires, at a minimum, that the plaintiff identify the speaker of allegedly fraudulent statements").

DiMare argues that this Court should apply a relaxed particularity standard because the factual information relating to the fraud is peculiarly within MetLife's knowledge or control. This Court has held that in cases such as corporate fraud, a plaintiff "cannot be expected to have personal knowledge of the details of corporate internal affairs" and thus has "relaxed the rule when factual information is peculiarly within the defendant's knowledge or control." *In re Craftmatic Sec. Litig.,* 890 F.2d 628, 645 (3d Cir.1989). However, in such circumstances, the plaintiff must expressly allege that the necessary information lies within the defendant's exclusive control and provide facts sufficient to indicate that the charges are not baseless. *F.D.I.C. v. Bathgate,* 27 F.3d 850, 876 (3d Cir.1994). DiMare has done neither. Furthermore, information about the person who made the allegedly fraudulent statements and the content of those statements is not peculiarly within MetLife's knowledge or control.

### 2.

DiMare's argument that the District Court erred in dismissing her claims for breach of implied contract and intentional infliction of emotional distress also fails. The District Court, in dismissing these claims, held that they were preempted by the NJLAD. DiMare's opening brief argues that she set forth a *prima facie* case for both of these claims, however, it completely fails to address the District Court's determination that these claims were preempted. Although DiMare

argues in her reply brief that the claims were not preempted, we conclude that her failure to bring the issue up in her opening brief constitutes a waiver of this argument on appeal. *See In re Surrick,* 338 F.3d 224, 237 (3d Cir.2003).

### IV.

For the reasons stated above, we will affirm the decisions of the District Court.